RECEIVED
JUN 25 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

JAMES BERNARD TRUMAN     DOCKET NO:12-CV-0473; SEC. P

VERSUS     JUDGE DEE D. DRELL

WARDEN NICOLE WALKER, ET AL.     MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION

*Pro se* plaintiff James Bernard Truman, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 22, 2012. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections; he is incarcerated at the Winn Correctional Center (WCC), Winnfield, Louisiana. Plaintiff complains that he was falsely charged and convicted of a prison disciplinary rules violation and that this false charge and his subsequent conviction were acts of retaliation based upon prison grievances and complaints filed with the prison administration. He sued Warden Timothy Keith, Assistant Warden Nicole Walker, and Assistant Chief of Security Tommy Glover praying for the expungement of his prison disciplinary rules conviction, nominative and punitive damages, and an order prohibiting retaliation.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### Background and Factual Allegations

Plaintiff alleges that, from September 2010 to August 2011 he

was allowed vocational training in the culinary arts and was supervised by Culinary Arts Instructor Johnson. On June 21, 2011 he submitted a first step administrative remedies procedure grievance designated WNC-2011-645. Plaintiff complained that he was being harassed and retaliated against by Corrections Officer Ferguson and Culinary Arts Instructor Johnson because plaintiff complained about an on-going illicit relationship between Johnson and another inmate assigned to Culinary Arts. Plaintiff did not provide a copy of the grievance, however, Assistant Warden Walker's response summarized plaintiff's complaint as follows:

> In your grievance dated June 21, 2011 you stated that you were being harassed and retaliated against for having knowledge of Correctional Officer Stacy Ferguson having a relationship with Inmate Willie Davis... You stated that Culinary Arts Instructor Theodore Johnson typed memos allowing this inmate and others to work on weekends. It is during this time that Officer Ferguson gets the keys to the coolers and freezers and they cook and bake all weekend. None of this is known by or approved by Culinary Arts Instructor Johnson. You go on to state that Officer Ferguson makes the tutors wait on her hand and feet and that on June 16, 2011, Officer Ferguson had problems with Inmate Cason ... because he did not get her a tray. According to your grievance Instructor Johnson and you have talked about the way that Officer Ferguson treats you. You also state that you finished culinary arts in May 2011 but had not been re-classed at the time of your grievance. As a result on June 21, 2011 you were threatened with retaliation from Officer Ferguson as you attempted to go through Cypress gate to work in culinary arts. [Doc. 1-3, p. 26]

In due course, Plaintiff's grievance was investigated. Assistant Warden Walker advised plaintiff about the results of her investigation:

2

> I have met with Culinary Arts Instructor Johnson, Correctional Officer Stacy Ferguson and Inmate Earl Cason. According to Mr. Johnson, [he] has no knowledge of an inappropriate relationship between Inmate Willie Davis and Officer Ferguson. He stated that memorandums are done bi-weekly for two to three tutors to do detail cleaning in the kitchen. All inmates assigned to the area must follow instructions of the security assigned to the area. Instructor Johnson further stated that the situation that you ... were referring to was not harassment, but the procedures by security staff to control inmate movement.
>
> Officer Ferguson stated that she has never had a relationship with Inmate Willie Davis. Inmates Willie Davis, James Gleason and other tutors have [come] to culinary arts on the weekends to cook for the shift with the approval of the shift supervisor and administrative duty officer... Ms. Ferguson stated that you ... had a problem with following the rules and if things don't go your way, you tell staff that you are going to file an ARP. She did have you ... return to your unit after talking to Instructor Johnson because you were finished with the culinary arts class and no longer needed in that area. Officer Ferguson stated that in no way has she threatened or harasses you.
>
> Inmate Cason stated that on June 16, 2011, culinary arts were not working. Staff in-service was conducted on the 13th and 15th of June. He further stated that there was no exchange of words between him and Officer Ferguson as to whether or not he would get the officer a tray. It is his job to serve the officers at CCA as a culinary arts tutor. [*Id.*]

Ultimately, the Assistant Warden determined that the allegations were unfounded. She concluded,

> Based on the interviews with staff as well as Inmate Cason, I ... find no merit to your grievance. As stated by Officer Ferguson, approval is granted by the shift supervisor or ADO staff person on duty before the keys to culinary arts are released to staff. This is done on most weekends, not just the weekends that Officer Ferguson is scheduled to work. Instructor Johnson state that he has never spoke to you in regards to you being harassed by staff. Inmate Cason stated that he has never had a problem with Officer Ferguson. Also, you completed

3

culinary arts on May 16, 2011 but were never re-classed by the Education Department. Once I became aware of this error, I contacted the Education secretary and you were re-assigned on June 22, 2011. Inmate Truman you failed to prove that there has been an inappropriate relationship between Officer Ferguson and Inmate Willie Davis or that you are being retaliated against for what you have knowledge of.

No further intervention is deemed necessary at this level. [*Ixd.*]

Plaintiff appealed the denial of his grievance to the LDOC Headquarters and on November 4, 2011 his appeal was denied. [Doc. 1-3, p. 28] In denying the appeal, the Department's representative noted,

> Your allegations have been considered. In statements from Officer Ferguson and Instructor Johnson, they deny your allegations and there is no reason to doubt the credibility of this officer and employee. There is also a completed investigation report which supports Officer Ferguson and Instructor Johnson's statements. You have failed to provide any evidence to substantiate your allegations or that would cause us to believe otherwise. [Doc. 1-3, p. 28]

As noted in the First Step Response, Plaintiff, having completed the curriculum, was transferred from Culinary Arts to the "P.E. Garment Factory." On December 14, 2011, Assistant Warden Walker lodged a Disciplinary Rules Violation charge against plaintiff. The basis of the charge was noted as follows,

> On December 14, 2011 at approximately 4:30 p.m. I ... received correspondence from Inmate... Truman. In the letter Inmate Truman made several malicious comments ... and also stated, 'On January 6, 2012, I will be eligible

> for Camp Beauregard,[1] I'd appreciate somebody expediting it. If I must stay here for any reason, I've decided to go ahead and fix this place.' Inmate Truman is in violation of Rule #30K – General Prohibited Behavior.[2] [Doc. 1-3, p. 29]

Plaintiff was served with a copy of the Disciplinary Report on December 16, 2011. [*Id.*]

Upon receiving the "write-up", Plaintiff wrote another administrative remedies procedure grievance. In this grievance, plaintiff reiterated some of the complaints he raised in WNC-2011-645. He also complained that following the denial of the original grievance he was "humiliated" by Corrections Officers Clark and Melton who he described as friends of Corrections Officer Ferguson. He accused Assistant Warden Walker and Mona Heyse, the corrections officials who reviewed and denied his grievance, of "covering up" the problems he complained of instead of "dealing with" them. He then claimed–

> On 12/13/2011, C/O Clark and C/O Bell decide they want to play with me some more. I've had enough. He wants to play

---

[1] Camp Beauregard, also known as the J. Levy Dabadie Correctional Center, is an LDOC facility located in Pineville. http://doc.la.gov/pages/correctional-facilities/j-levy-dabadie-correctional-center/

[2] The regulation proscribes, "The communication of statements or information known to be malicious, frivolous, false, and/or inflammatory, the purpose of which is reasonably intended to harm, embarrass, or intimidate an employee, visitor, guest, offender or their families; (This rule shall not apply to information and/or statements communicated for the express purpose of obtaining legal assistance.)" See Doc. 1-3, p. 65, LDOC Disciplinary Rules and Procedures for Adult Offenders, Part VIII, Disciplinary Rules, Section 30(K).

> with me at count and humiliate me. She's his puppet. After work I go to the count-room to do something about this. Nobody in sight. I find Ms. Smiley at chow. She's got her hands full already with other business. I wrote the letter in question to Warden Walker. Instead of dealing with the problem, which she's fully aware of, she retaliates. She writes the 30K offense in question here. I was upset because they put me in this position and now I'm sitting here with a write-up I not only don't deserve, but is patently unconstitutional... It's illegal for you to write me up for complaining about conditions at this place, or for telling you I'm going to sue, which I have every intention of doing once we exhaust our administrative remedies with no results. Simply put, I got caught up in this crazy drama of the people who work here. It's not fair for me to be written up for trying to continually get myself extricated from the mess. Warden Walker is dead wrong for covering up this mess. The problem with lies is that if you're persistent enough, eventually you'll slip (like when I file suit now that she's violated my First Amendment Rights, and all these people can be subpoenaed to court to testify), it will catch up with them. At disciplinary court I gave enough information so that Chief Glover took me out of P.E. Garment. (What Ms. Walker should have done in the first place) and moved me to Birch. He fixed the problem I believe except he left me with this 30K that's unconstitutional, and now I must wait 90 days to apply to Camp Beauregard. In all fairness, the write-up should be expunged from my records. If it is, this is over. If it's not, we'll resolve it in the Western District. [Doc. 1-3, pp. 30-33]

Plaintiff received a hearing on the disciplinary charge on December 21, 2011. He was found guilty of the charge of "General Prohibited Behavior #30K" and, as his sentence, he was given a "job change to Birch Yard orderly." He appealed the conviction and on January 9, 2012 his appeal was denied by Warden Keith who observed:

> I have received and reviewed your appeal as well as the disciplinary report. On 12/14/11, Asst. Warden Walker received written correspondence from you which contained several malicious comments. On 12/16/11, you were written up for General Prohibited Behavior #30K.

> On 12/21/11, you appeared before the disciplinary board, requested no witness nor presented any evidence on your behalf. The report and evidence was read into the record to support the charge. You were found guilty with penalties imposed of job change to Birch yard orderly.
>
> You argue in your appeal that ... this write up is in retaliation for ARP #WNC-2011-645; it is to be noted, the ARP in question was addressed at both the 1st and 2nd Steps. You attempted to refile the ARP because you were not in agreement with the decision rendered and reject as moot issue. You then wrote [Assistant Warden] Walker with your threats and were written up for your actions. In addition, the last sentence in your appeal states 'if this report is expunged from your record – this is over. If not, we'll resolve it in the Western District.' Again, making threats.
>
> I find no reason to overturn the board's findings and the penalties imposed... Your appeal is denied. [Doc. 1-3, p. 34]

It is unclear whether plaintiff sought further review. In any event, he filed the instant complaint on February 22, 2012. As noted above, Plaintiff sued Assistant Warden Walker, Warden Keith, and Assistant Chief Tommy Glover. Plaintiff claims that Walker retaliated against him for complaining about conditions of confinement and filed a false disciplinary report after Plaintiff complained about the treatment he was receiving from corrections officers. He maintains that she violated his rights to freedom of speech and due process as guaranteed by the First and Fourteenth Amendments. He claims that Warden Keith denied freedom of speech and due process by denying the appeal of his disciplinary rules conviction. Finally, he claims that Chief Glover violated his rights by finding him guilty of the false disciplinary rules

violation.

## Law and Analysis

1. ***Disciplinary Rules Violation***

Plaintiff implies that he was deprived of liberty interests in violation of the due process clause of the Fourteenth Amendment when he was falsely charged and thereafter convicted of a disciplinary rules violation that ultimately resulted in his job reclassification and in delaying his eligibility to be transferred to Camp Beauregard. His complaint fails to state a claim for which relief might be granted pursuant to 42 U.S.C. § 1983 because "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Sandin v. Conner, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

In other words, when a prisoner is lawfully incarcerated, he loses by virtue of his confinement, many of the rights and privileges that most citizens enjoy. Madison v. Parker, 104 F.3d 765, 767 (5th Cir.1997). Thus, mere changes in the conditions of confinement do not implicate due process concerns. See Madison,

104 F.3d at 768; see also Harper v. Showers, 174 F.3d 716, 718 (5th Cir. 1999)("Inmates have no protectable property or liberty interest in custodial classifications.").

Plaintiff lost no good time credits as a result of the allegedly defective disciplinary proceedings and therefore Plaintiff's transfer to Birch Dorm and his loss of eligibility for a transfer to Camp Beauregard did not amount to an "atypical" hardship and therefore his claim is frivolous. Sandin v. Connor, 515 U.S. 472 (1995); Meachum v. Fano, 427 U.S. 215, 228 (1976).

## 2. Retaliation

Plaintiff also claims that the defendants retaliated against him. He implies that the disciplinary rules violation, his subsequent conviction of the alleged violation, and the denial of his appeal were all retaliatory acts based upon his continued complaints about the conditions he experienced in the Culinary Arts classes and the P.E. Garment Factory.

It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory

9

adverse act occurred, and (4) causation.

Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir.1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995 (1997); McDonald v. Steward, 132 F.3d 225 (5th Cir. 1998). "The inmate must allege more than his personal belief that he is the victim of retaliation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999). "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom* Palermo v. Woods, 516 U.S. 1084(1996)).

Plaintiff claims that his complaints about the conditions in the Culinary Arts school and thereafter in the P.E. Garment factory, and his threats to take legal action if the complained of conditions went unremedied resulted in the filing of false disciplinary charges by Assistant Warden Walker, his conviction on those charges by Chief Glover, and the denial of his appeal by Warden Keith.

Plaintiff's retaliation claim is without merit because he cannot show that the allegedly adverse acts – the filing of disciplinary charges, his conviction on those charges, and the denial of his appeal, all of which resulted in his transfer from

the P.E. Garment Factory to a job as Birch Dorm orderly – constituted a retaliatory adverse act. In fact, as shown above, Plaintiff himself agreed that the transfer to Birch Dorm was not only appropriate but was welcomed.[3] To the extent that Plaintiff complained that the disciplinary conviction resulted in a 90-day delay with regard to his transfer to Camp Beauregard, such a claim is speculative at best, and, even if true, amounted to nothing more than a *de minimis* injury because such action by the defendants was not so harsh as to deter a person of ordinary firmness from the further exercise of his Constitutional rights.[4] <u>Morris v. Powell</u>, 449 F.3d 682, 685-86 (5th Cir.2006), *cert. denied* 549 U.S. 1038 (2006)(Some acts, though maybe motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.) Consequently, Plaintiff's retaliation claim lacks an arguable basis in law and is frivolous. <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

---

[3] Plaintiff elsewhere asserted, "At disciplinary court I gave enough information so that <u>Chief Glover took me out of P.E. Garment. (What Ms. Walker should have done in the first place) and moved me to Birch. He fixed the problem I believe except he left me with this 30K that's unconstitutional, and now I must wait 90 days to apply to Camp Beauregard</u>." Doc. 1-3, pp. 30-33]

[4] Although the test is objective, it must be noted that plaintiff, himself, was not deterred from exercising his rights.

### *3. First Amendment Claims*

Finally, plaintiff contends that his rights to free speech were violated by the defendants. Indeed, he complains that the prison disciplinary rule which he was charged with violating restricted his freedom of speech. As noted above, the regulation in question proscribes, "The communication of statements or information known to be malicious, frivolous, false, and/or inflammatory, the purpose of which is reasonably intended to harm, embarrass, or intimidate an employee, visitor, guest, offender or their families; (This rule shall not apply to information and/or statements communicated for the express purpose of obtaining legal assistance.)" See Doc. 1-3, p. 65, LDOC Disciplinary Rules and Procedures for Adult Offenders, Part VIII, Disciplinary Rules, Section 30(K).

Such regulations should be upheld against constitutional attack so long as the regulation is "reasonably related" to legitimate penological goals. Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987). The regulation in question does not stifle all prisoner speech; indeed, it proscribes only "... malicious, frivolous, false, and/or inflammatory" speech, "...the purpose of which is reasonably intended to harm, embarrass, or intimidate an employee..." In this instance, the speech in question – i.e., plaintiff's accusations concerning an illicit relationship between a corrections officer and an inmate, were not

protected speech and his conviction of the rules violation did not violate the Constitution.

*Conclusion*

Accordingly, **IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. USAA, 79 F.3d 1415 (5th Cir. 1996).**

Thus done and signed at Alexandria, Louisiana, this ___ day of June, 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE